UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

MORRIS P. ALLBRITTON, ET AL.        *        DOCKET NO.  06-0774


VERSUS                              *        JUDGE JAMES


INTERNATIONAL MINERALS &            *        MAGISTRATE JUDGE HAYES
CHEMICAL CORPORATION, ET AL.

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge are a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) [doc. # 83] and a Motion for Summary Judgment [doc. # 89] filed by Defendant, Koch Nitrogen Company.  The motions have been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons stated below, it is recommended that the motion to dismiss be **GRANTED**[1] and that the motion for summary judgment be **DENIED**.

<u>Background</u>

On August 15, 2005, thirteen former employees of International Minerals & Chemical Corporation ("IMCC") fax-filed the above-captioned suit against IMCC in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.  Plaintiffs alleged that they were employed by IMCC at its nitrogen ammonia plant in Sterlington, Louisiana during various periods from 1948 through 1992.  The petition further alleged that while employed by IMCC plaintiffs were exposed to "occupational hazardous noise levels" which were unreasonably loud. (Petition, ¶ 3).  As a result of the noise exposure, plaintiffs contend that they suffered varying degrees of hearing impairment.  *Id*. at ¶ 4.

---

[1]  This motion was converted into a motion for summary judgment.  *See*, discussion, *infra*.

Two days after fax-filing their original complaint, plaintiffs amended their petition to join an additional 32 plaintiffs and two defendants, Angus Chemical Company ("Angus") and Koch Nitrogen Company ("Koch"). (1ˢᵗ Amend. Pet.). The amended petition alleges that in 1991, Angus assumed ownership and control of IMCC's chemical plant in Sterlington, Louisiana. *Id.* at ¶¶ 2a and 3a. In 1992, Koch assumed ownership and control of IMCC's ammonia nitrogen plant in Sterlington. *Id.* at ¶¶ 2b and 3a. Thirteen of the new plaintiffs sought recovery against IMCC and Angus for occupational hearing loss that each sustained during their varying dates of service that extended from 1946 through 2005. *Id.* at ¶ 3, Exh. B. The remaining nineteen new plaintiffs alleged a cause of action against IMCC and Koch for hearing loss that each sustained during their individual tours of duty that extended from 1954 through 2005. *Id.* at ¶ 3, Exh. C.

On September 21, 2005, defendants removed the case to the United States District Court for the Middle District of Louisiana on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). On May 1, 2006, the case was transferred to this court. (*See*, May 1, 2006, Order). Three months later, IMCC filed a motion to dismiss that eventually culminated in a February 8, 2007, judgment dismissing plaintiffs' claims against it. *See*, February 8, 2007, Ruling and Judgment.[2] Three more plaintiffs were dismissed from the suit for failing to comply with a discovery order. (*See*, May 22, 2007, Judgment).

On May 10, 2007, Koch filed the instant motion to dismiss for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6). [doc. # 83]. The motion seeks to dismiss the remaining claims of eleven of the sixteen plaintiffs who are proceeding against

---

[2] The thirteen original plaintiffs sued only IMCC; thus the February 8, 2007, judgment effectively dismissed them from the suit.

2

Koch.[3]  On May 24, 2007, Koch filed a motion for summary judgment seeking to dismiss the claims of the five plaintiffs who were still employed by Koch within one year of filing suit.[4]  Following a reply brief that incorporated evidence outside of the pleadings, the court notified the parties that the motion to dismiss would be treated as a motion for summary judgment.  (*See*, June 7, 2007, Order).  The parties were afforded additional time to submit any additional briefs and/or competent summary judgment evidence.  *Id*.   Briefing is now complete, and the matter is before the court.[5]

<u>**Summary Judgment Principles**</u>

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law.  F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists.  *Celotex Corp.*, 477 U.S. at 323.  Once the

---

[3]  The plaintiffs include Eddie L. Beaver, Virgell Birden, Jr., James A. Brown, William C. Gibson, Mickey D. Haye, Bobby R. Lowery, Reginald S. Mike, Jackie D. Norton, Raymond Parks, Jerry Smith, and David Sutton.

[4]  These plaintiffs include Jessie D. Evans, Roger Eubanks, Earl J. Shirey, Kenneth W. Franklin, and Verdie L. Potter.

[5]  On June 22, 2007, Koch filed a Supplemental Motion to Dismiss under Federal Rule of Civil Procedure 56. [doc. # 103].  This motion supplemented Koch's original motion to dismiss which has now been converted into a motion for summary judgment.  *See*, June 7, 2007, Order.

moving party has successfully demonstrated the absence of a genuine issue of material fact, the

burden shifts to the non-moving party to show the opposite.  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In doing so, the non-moving party may not

merely rely on the allegations and conclusions contained within the pleadings; rather, the movant

"must go beyond the pleadings and designate specific facts in the record showing that there is a

genuine issue for trial."  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Furthermore, these specific facts must be shown through something more than "some

metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a

mere scintilla of evidence."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Analysis

Koch seeks dismissal of plaintiffs' claims on the basis of prescription.  Louisiana Civil

Code Article 3492 governs delictual actions such as the one now before the court, and sets a

liberative prescription period of one year, running from the date that injury or damage is

sustained.  *See*, *Crowe v. Smith*, 848 F. Supp. 1258 (W.D. La. 1994); *Safford v. Payne-Webber,*

*Inc.*, 730 F. Supp. 15 (E.D. La. 1990).  Ordinarily, the burden of proof is on the party pleading

prescription.  *Lima v. Schmidt*, 595 So. 2d 624, 628 (La. 1992).[6]  Under Louisiana law, however,

a plaintiff has the burden of proof to establish facts which would have the effect of interrupting

or avoiding prescription when it appears that the claims have prescribed on the face of the

complaint.  *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly, supra*.

The eleven plaintiffs at issue in the converted motion for summary judgment ended their

employment with Koch more than one year before suit was filed, and thus their claims are

_____

[6] The prescription statute is strictly construed against prescription and in favor of the
obligation sought to be extinguished.  *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

4

facially prescribed.  *See*, 1ˢᵗ Amend. Petition, Exh. C.  To overcome prescription, plaintiffs rely

on the doctrine of *contra non valentem agere nulla currit praescripto*.  Under this theory,

prescription is suspended when the case falls into one of four categories.  *Wimberly, supra*.

Plaintiffs rely on *contra non valentem's* fourth category, also commonly known as the discovery

rule.  The discovery rule provides that "prescription commences on the date the injured party

discovers or should have discovered the facts upon which his cause of action is based."

*Wimberly*, 635 So.2d at 211.  In other words, "[p]rescription commences when a plaintiff obtains

actual or constructive knowledge of facts indicating to a reasonable person that he or she is the

victim of a tort."  *Campo v. Correa*,  828 So.2d 502, 510 (La. 2002) (citation omitted).  The

prescriptive period will begin to run even if the injured party does not possess actual knowledge

sufficient to initiate suit, as long as there is constructive knowledge.  *Id*.

        Constructive knowledge is such notice that excites attention and places the injured party

on guard and calls for further inquiry.  *Id*.  "Such notice is tantamount to knowledge or notice of

everything to which a reasonable inquiry may lead."  *Id*.  The discovery rule "will not exempt the

plaintiff's claim from the running of prescription if his ignorance is attributable to his own

wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable

diligence have learned."  *Renfroe v. State ex rel. Dept. of Transp. and Development*,  809 So.2d

947, 954 (La. 2002) (quoting *Corsey v. State of Louisiana, Through the Department of

Corrections*, 375 So.2d 1319, 1322 (La.1979)).  The ultimate issue is the reasonableness of the

plaintiffs' response.  *See, Campo, supra*.

1) Converted Motion for Summary Judgment

        Plaintiffs allege that they sustained a substantial impairment to their hearing, yet

remained unaware of the loss due to the gradual decline.  (1ˢᵗ Amend. Pet., ¶ 7).  In support of its

5

motion, Koch has adduced numerous employment records establishing that between 1979 and 1999 each of the eleven plaintiffs at issue underwent between eight and fifteen audiograms while employed at the Sterlington facility.  (Koch Exhs. 4-14).[7]  Moreover, Koch had a policy of notifying its employees when their audiograms indicated a standard threshold shift (*i.e.* a 10-decibel hearing loss).  (*See e.g.*, Koch Exh. 21, pg. RM-033).  All, but two plaintiffs acknowledged their 1996 audiogram results by signing them.  (Koch Exhs. 4-14).[8]  Several plaintiffs were sent letters notifying them that they had suffered hearing loss.[9]  One plaintiff, Bobby R. Lowery, used bilateral hearing aids and was under the care of an audiologist in 1999. (Koch Exh. 9).

In response to Koch's motion, plaintiffs have each submitted nearly identical affidavits. (Pl. Resp. Memo. [doc. # 150], Attachs.).[10]  Yet, rather than averring that they were unaware of their hearing loss prior to August 20, 2004, plaintiffs assert that they were unaware that their hearing loss was *caused* by occupational noise until August 20, 2004.  *Id*.  (emphasis added). Indeed, in their latest memorandum, plaintiffs concede that the numerous audiogram results consistently showed abnormalities and that "[p]laintiffs had knowledge of their hearing loss." (Pl. Resp. Memo. [doc. # 105], pg. 3).[11]

---

[7]  Only four tests were administered to Kenneth Franklin.  *Id*.

[8]  Virgell Birden Jr. and David Sutton did not participate in the 1996 audiograms because they were no longer employed by Koch.  (1st Amend. Pet., Exh. C).

[9]  These plaintiffs included James A. Brown, William C. Gibson, and Mickey D. Haye, (Koch Exhs. 6-8).

[10]  James A. Brown's affidavit was not included.  It was to be supplemented at a later date.  (Pl. Resp. Memo., pg. 2, n. 3).

[11]  In their initial responsive memorandum, plaintiffs argued that the only audio/hearing test that they had ever received occurred on August 20, 2004.  (Pl. Opp. Memo., pg. 7).

For purposes of this motion, the court must accept plaintiffs' averments that until August 2004, they were personally unaware that their hearing loss was *caused* by occupational noise. (Pl. Resp. Memo., Attachs.).  However, prescription begins to run not only when plaintiffs have actual knowledge of their cause of action, but also when they possess constructive knowledge, that is, such notice that excites attention, places the injured party on guard, and calls for further inquiry.  *Campo, supra.*

In the case *sub judice*, Koch has adduced uncontroverted evidence that all of the plaintiffs at issue participated in Koch's annual Hearing Conservation Program.  (Koch Exhs. 15-25).  The Program required employees to complete questionnaires or quizzes to ensure their knowledge of noise related issues.  The quiz results reveal that as early as 1993-1994, all plaintiffs were aware that monitoring was used to determine which areas of the plant posed potential noise exposure concerns.  (Koch Exhs. 15-25).  All plaintiffs knew that employees exposed to noise levels at 90dBA or above were required to wear hearing protection.  *Id*.  All plaintiffs further knew that Koch provided Engineering and Administrative controls to limit employee exposure to high noise levels.  *Id*.  All, but two employees[12] recognized that hearing protectors were required in the Ammonia I, Ammonia II, and Gas Distribution areas of the facility.  *Id*.

While plaintiffs may personally profess ignorance of the potential link between their hearing loss and occupational noise exposure, a reasonable person with plaintiffs' knowledge as

---

However, Koch has submitted evidence of numerous audiograms administered to plaintiffs over the years.  Moreover, there are no allegations or indications that the audiograms were fabricated or doctored.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, ____U.S. ____, 127 S.Ct. 1769, 1776 (2007).  Accordingly, the court accepts defendant's evidence of prior audiograms.

[12]  Birden and Sutton.

gained via the Hearing Conservation Program would have been compelled to make further

inquiry regarding a potential nexus between their hearing loss and their exposure to high levels of

occupational noise.  *See generally, Campo, supra*.  The exercise of reasonable diligence at that

point in time (the 1990's) would have confirmed the potential link between plaintiffs'

acknowledged hearing loss and exposure to occupational noise.[13]

In sum, plaintiffs possessed constructive notice of their cause of action more than one

year before they initiated suit.  Accordingly, the discovery rule is inapplicable, and, as to the

eleven plaintiffs at issue, the instant suit was untimely filed and their claims are time-barred.  La.

Civ. Code Art. 3492.

2) <u>Motion for Summary Judgment</u>

Koch's motion for summary judgment addresses the claims of the five plaintiffs whose

employment with Koch extended to within one year of the commencement of this suit.  Because

these claims are not patently untimely, Koch retains the burden of proof.  When a movant bears

the burden of proof on an issue, it must establish "beyond peradventure[14] all of the essential

elements of the . . . defense to warrant judgment in [its] favor."  *Martin v. Alamo Community*

*College Dist.*,  353 F.3d 409, 412 (5th Cir. 2003) (citations omitted).

Koch adduced evidence that plaintiffs Verdie Potter and Kenneth Franklin underwent

---

[13]   Citing *Smith v. States Marine International, Inc.*, plaintiffs argue that it was reasonable
for them not to have deduced the cause of their hearing loss.  *Smith v. States Marine
International, Inc.*, 864 F.2d 410 (5th Cir. 1989).  *Smith*, however, was decided under the Jones
Act and general maritime law, and there was evidence adduced in *that case* that hearing loss
victims ordinarily do not attribute their loss of hearing to noise exposure.  *Id*.  In contrast, the
instant plaintiffs participated in a Hearing Loss Conservation Program, and were provided
information sufficient, at a minimum, to compel further inquiry into the connection between their
hearing loss and exposure to unreasonable levels of occupational noise.

[14]   In other words, beyond doubt.

numerous audiograms during their respective tenures at the Sterlington facility.  (Koch Exh. 35).

However, the most recent test results submitted by Koch (October 8, 2002), indicated that Potter

and Franklin's hearing  was normal.  (Koch Exhs. 36.4, 41).  Thus, any hearing loss that they

sustained would have been of recent origin.  There is no evidence that Potter and Franklin were

aware of their alleged hearing loss more than one year prior to filing suit.  Accordingly, Koch has

not established beyond peradventure that Potter and Franklin's claims were untimely filed.

*Martin, supra*.

As to the three remaining plaintiffs, Koch has adduced uncontroverted evidence that they

were aware of their hearing loss, and that they should have been aware of the causal link to

occupational noise exposure more than one year before filing suit.  For example, between 1979

and 2003, Roger K. Eubanks submitted to approximately 12 audiograms.  (Koch Exh. 7).

Between 1989 and 2002, Eubanks was sent seven letters documenting his hearing loss.  (Koch

Exh. 8).  In 1995, Eubanks reported ringing in his ears, and in 2003 he indicated that he had

difficulty hearing.  (Koch Exhs. 12, 14).  In at least two letters sent to Eubanks notifying him of

his hearing difficulties, he was specifically advised (as early as 1989) to use ear protection "when

in noise, both on and off the job."  (Koch Exh. 15).

Earl Shirey likewise participated in approximately 15 audiograms between 1979 and 2002

while employed at the Sterlington plant.  (Koch Exh. 18).  Between 1992 and 2002, Shirey was

sent at least five letters notifying him of a moderate to severe hearing loss.  (*See*, Koch Exh. 19).

The 1992 letter cautioned Shirey to "[u]se ear protection when in noise, both on and off the job."

(Koch Exh. 19.1).  In 1996, Shirey signed a Physical Exam Review which indicated that his

hearing was abnormal.  (Koch Exh. 20).  In an April 2, 2003, Preoperative Nursing Record, it

was noted that Shirey had a left ear impairment.  (Koch Exh. 23).

Between 1979 and 2003, Jesse D. Evans participated in approximately 15 hearing tests at the Sterlington facility.  (Koch Exh. 27).  In 2002 and 2003, Evans was sent letters notifying him that he had suffered a hearing loss.  (Koch Exh. 28).  One of the letters advised Evans to "always wear hearing protection whenever you are around loud equipment or machinery and whenever you are shooting firearms."  (Koch Exh. 28.4).  Also, on August 14, 2003, Evans signed his audiogram results which indicated that he had moderate to severe hearing loss in the high frequency range.  *Id*.

Finally, Koch adduced evidence that the three plaintiffs at issue participated in Koch's Hearing Conservation Program.  (*See*, Koch Exhs. 17, 33, & 41).  Beginning in 1993, Eubanks, Shirey, and Evans completed numerous quizzes and questionnaires that ensured their awareness of the dangers to hearing posed by occupational noise exposure.  *Id*., *see* discussion, *supra*.

Despite plaintiffs' professed ignorance of the link between their hearing loss and their exposure to excessive occupational noise,[15] a reasonable person having received the cautions and training that Eubanks, Shirey, and Evans received would have been compelled to make further inquiry at an earlier juncture to confirm the potential nexus between his hearing loss and exposure to occupational noise.  Accordingly, the discovery rule does not interrupt these plaintiffs' otherwise prescribed claims.

Plaintiffs alternatively contend that as to the five plaintiffs at issue in this motion, the petition was timely filed pursuant to the continuing tort doctrine.  (1st Amend. Pet., ¶¶ 9c & 9d).[16] Succinctly stated, the continuing tort doctrine provides that "[w]hen the tortious conduct and

---

[15]   *See*, Affidavits of Eubanks, Shirey, and Evans; Pl. Exhs.

[16]   The theory of *contra non valentem* and the discovery rule are distinct from the continuing tort doctrine.  *Coulon v. Witco Corp.*,  848 So.2d 135, 137-138 (La. App. 5th Cir. 2003).

resulting damages continue, prescription does not begin until the conduct causing the damage is abated." *South Central Bell Telephone Co. v. Texaco, Inc.*,  418 So.2d 531, 533 (La. 1982).

In *Coulon v. Witco Corp.*, the plaintiff allegedly suffered permanent neurological injuries due to his exposure to significant amounts of neurotoxins and carcinogens while working. *Coulon supra*.  Despite evidence of plaintiff's awareness of his damages and the causal link to his work site exposure more than one year before he filed suit, the court of appeals affirmed the trial court's determination that the prescriptive period did not begin to run until the alleged cause of damages abated, *i.e.* until plaintiff's last day of employment.  *Id*.  The same reasoning applies here.

Koch contends that the burden of proof is on the plaintiffs to demonstrate continuous exposure to unsafe occupational noise levels.  However, when plaintiffs' petition alleges a continuous course of conduct that extended to less than one year before suit was filed, plaintiffs' action is not facially prescribed, and the burden of proof remains with the defendant to establish prescription.  *Bustamento v. Tucker*,  607 So.2d 532, 542 (La. 1992) (citations omitted).  In an apparent effort to argue that plaintiffs were not continuously exposed to unreasonably loud noise levels within one year of filing suit, Koch emphasizes that plaintiffs were provided hearing protection devices and cautioned to use them.  However, the fact that plaintiffs Potter and Franklin apparently did not sustain hearing damage until recently provides some evidence that at least some of the damage was of recent origin, that Koch's protective devices may have been inadequate, that its hearing program may have been insufficient, or that its policy was not adequately enforced.  Accordingly, Koch has not established beyond peradventure that the plaintiffs at issue did not continue to be exposed to unreasonably high noise levels with resulting damages less than one year before the instant suit was filed.  The viability of the continuing tort

11

doctrine to the claims of Eubanks, Shirey, Evans, Franklin, and Potter precludes a determination that their claims are time-barred.

For the above reasons,

IT IS RECOMMENDED that Koch Nitrogen Company's converted motion for summary judgment (f/k/a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) [doc. # 83] as supplemented [doc. # 103]) be **GRANTED** and that plaintiffs' Eddie L. Beaver, Virgell Birden, Jr., James A. Brown, William C. Gibson, Mickey D. Haye, Bobby R. Lowery, Reginald S. Mike, Jackie D. Norton, Raymond Parks, Jerry Smith, and David Sutton's claims against Koch Nitrogen Company be **DISMISSED, with prejudice**.

IT IS FURTHER RECOMMENDED that Koch Nitrogen Company's  motion for summary judgment as to the claims of plaintiffs Jessie D. Evans, Roger Eubanks, Earl J. Shirey, Kenneth W. Franklin, and Verdie L. Potter [doc. # 89] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 18th day of July, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

13